No. 37,317

THE STATE OF KANSAS, *Appellant*, v. SIX SLOT MACHINES (and MATHENY VENDING MACHINE COMPANY, INC., Intervenor) *Appellee*.

(201 P. 2d 1039)

Opinion filed January 22, 1949.

*Harold H. Malone,* county attorney, argued the cause, and *Edward F. Arn,* attorney general, *H. R. Fatzer,* assistant attorney general, *A. P. Woodard, Jr., E. Lael Alkire, W. Jay Esco, Paul V. Smith* and *D. Emmett Foley,* deputy county attorneys, were with him on the briefs for the appellant.

*Ray H. Tinder,* of Wichita, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: The state of Kansas instituted what it denominates a proceeding in rem as a result of which the sheriff of Sedgwick county seized six slot machines. Matheny Vending Machine Company, hereafter called the company, filed an intervention claiming to own three of the machines. At the trial the company's demurrer to the state's evidence was sustained and the state appeals.

It is not clear from the abstracts just how the proceeding was commenced, but on March 26, 1947, a judge of the district court

caused a warrant to issue which recited that it appearing from satisfactory information furnished him that there were certain prohibited gambling devices kept or used within the county, the sheriff was commanded to seize and bring before the judge all such gambling devices including, but not limited to, slot machines, at the locations shown on an attached list. Under that warrant the sheriff seized six slot machines. On December 26, 1947, the state filed an information setting forth the seizure and that the above named company and the owners and operators of the Cubula Club might have some title to or interest in the machines. On the same day there was issued a further document entitled "Warrant and Notice in District Court." It was stated therein that the company and the owners and operators of the club might have some interest in the seized machines and the sheriff was ordered to serve a copy of the warrant and order upon them and to bring the machines into court on February 4, 1948. On January 30, 1948, the company filed its interplea, setting up its ownership of three of the machines and praying for an order directing the sheriff to return them to the place from which they were taken.

At the trial the state's evidence showed the following: The three slot machines involved in the present appeal were seized at the Cubula Club. A federal statute imposes a tax of $100 per year on every person who maintains for use or permits the use, on premises occupied, of coin operated gaming devices. This tax had been paid for three coin-operated gaming devices at the Cubula Club. In a negative way it may be said the abstracts do not disclose who paid the above tax, nor is there any showing that the three machines hereafter mentioned were the only ones at the club. The club had a reputation as being a place where gambling was conducted with slot machines. It had a main room and dance floor about 30 by 40 feet and a door to the room where the machines were found was open. The room in which the machines were found was the living quarters of Smith, the operator of the club. When the machines were found, they were locked and the keys were not with them. The machines stood on metal stands and were covered with a quilt. The machines were designed for gambling and there was no other use for them. They operate by placing a coin in the slot and pulling on a lever. If the right combination comes up the machine pays off. No outside agency is employed. The machine receives the coin and pays the player in coin if he wins and nothing if he loses. When the ma-

chines were seized there wasn't any money in them—there may have been a few coins in the circle where it goes to the jackpot. The five-cent machine would not work, the handle could not be pulled down. It is not clear from the abstract, but apparently the only witness was a deputy sheriff who made the seizure. He stated he did not know of his own knowledge that the machines were set up or kept for use by Smith, operator of the club, for the purpose of gambling or whether any·persons were permitted to play the machines.

As has been stated, the company's demurrer to the above evidence was sustained and the state appeals.

In a preliminary way we note that no question is raised by the company concerning the procedure followed by the state, nor whether our code authorizes a proceeding of this character. Our consideration of the state's contentions is not to be construed as either approval or disapproval of the procedure invoked.

Although the state and the company state the question differently, it is clear that the question is whether the district court, under the facts, had power to order destruction of the seized slot machines.

In stating its contention the trial court erred in its ruling, the state concedes that mere possession of a slot machine is not an offense under our statutes unless there is coupled with the possession either inducement, enticement or permission for another to play it, but it states it is not prosecuting a person for an offense but is proceeding only to destroy an instrumentality adapted solely for use in the commission of a crime, and that therefore evidence of unexplained possession of a device such as a slot machine, adapted, devised and designed solely for gaming, while not a crime, places a burden upon someone to come forward and show to the satisfaction of a court that the device is set up or kept for some lawful purpose, if any exists; that if an owner of the device should introduce affirmative evidence that it was kept or used for some lawful purpose and other than as an instrumentality for the violation of the law, then a court might be justified in refusing to order destruction, otherwise an order for destruction is proper.

We shall first review briefly sections of our statutes dealing with crimes and punishments and which may be pertinent or applicable. All references are to the General Statutes of 1935.

Under 21-915 every person who shall set up or keep certain named devices "or any kind of . . . gambling device" adapted,

devised and designed for the purpose of playing any game of chance for money or property *or* shall induce, entice or permit any person to bet or play thereat, *or* shall keep a place or room to be used for the purpose of gambling, shall on conviction be adjudged guilty of a felony.

Under 21-925 it is provided that in all cases where *gambling devices prohibited are kept, set up or used* as set forth by the foregoing section, the judge or justice of the peace may issue his warrant to the sheriff or constable to bring the devices before him for destruction, shall fix a day for hearing, cause notice to be served upon the owner requiring him to appear on the day fixed and show cause why an order for destruction should not be made.

Under 21-944 whenever any judge or justice of the peace shall have knowledge or satisfactory information that any *prohibited gambling device* is kept or used within his county, it is his duty to issue his warrant to the sheriff or constable to seize and bring before him such gambling device.

Under 21-947 it is the duty of the judge or justice of the peace to cause *such prohibited device* to be publicly destroyed.

All of the sections above reviewed were enacted or amended in 1895 or earlier. In none of them were the words "slot machine" used. The two sections hereafter reviewed were enacted by Laws 1903, ch. 223.

Under 21-1508 "every person who shall set up or keep in any room where merchandise is sold or kept for sale . . . or other public or private place any slot machine or gambling device, devised and designed for the purpose of playing any game of chance" *and* shall induce, entice or permit any person to bet thereon, shall on conviction be adjudged guilty of a misdemeanor.

Under 21-1509 it is provided that upon conviction of any person under the provision of this act, the court shall as a part of its judgment order the destruction of "all slot machines used by or in possession of the defendant" and the sheriff shall execute the judgment and order by publicly destroying "such slot machine or slot machines by burning or otherwise."

There could be no destruction of the machines now involved under the last section, for concededly no person was tried or adjudged guilty of the immediately preceding section.

The state first directs our attention to *Clemons v. Wilson*, 151 Kan. 250, 98 P. 2d 423, and stresses language therein that the legis-

lature has never made possession of gambling devices an offense nor has it ever said it was lawful to have gambling devices in one's possession (1. c. 256), and that slot machines are instruments by which the law is violated; that they serve no useful purpose, and that no lawful right of the owner would be violated if the machines were destroyed (1. c. 257). That language, however, must be read in the light of what the issue was in that case. The City of Wichita had an ordinance making it an offense for any person, among other things, to have in his possession in any public or private place in the city any slot machine, and providing that upon conviction of any person for violation, the police judge should, as a part of his judgment order destruction of the machine. The particular provisions mentioned are quoted in that opinion and reference is made thereto. Clemons was charged with violation of the ordinance, on trial was found guilty, and as a part of the judgment the machines taken were ordered destroyed. Clemons then instituted an action in replevin against the defendants, who were police officers of Wichita, to recover possession of the machines. On appeal this court held that the ordinance was valid, and, without detailing all reasons, that the decision of the trial court denying plaintiff's recovery should be affirmed. In our opinion that case does not support the state's contention.

The state also directs our attention to *State v. Brown,* 118 Kan. 603, 236 Pac. 663, where a prosecution was had under what is now G. S. 1935, 21-915. Defendant appealed from a verdict of guilty and judgment thereon. That opinion contains a review of our statutes pertaining to gambling and to decisions construing them. While that case did not involve the right of destruction of prohibited devices, it is of interest on the general question of who is liable as a person who shall set up or keep such a device. Without reviewing what is said in that opinion we note the holding of the court that:

"That portion of R. S. 21-915 making it an offense to set up or keep certain named gambling devices, or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of gambling, or to induce any person to bet or play at or upon such gaming table or gambling device, or at any game played by means thereof, either on the side of or against the keeper, is directed primarily at the professional gambler and the tools and implements of his calling, or his use thereof.

"It is an essential element of the offenses of setting up or keeping a gambling device, or of inducing persons to bet or play at a game thereon, that

there be a keeper of such device, as that term is defined in R. S. 21-935." (Syl. ¶¶ 1, 2.)

Another case relied on by the state is *Boynton v. Ellis,* 57 F. 2d 665. Ellis had invoked the equity jurisdiction of the United States district court to enjoin criminal prosecutions and to prevent officers of Kansas from seizing and destroying slot machines, and obtained relief in the trial court. On appeal the circuit court of appeals reversed. In its opinion that court said that slot machines must be classified as gambling devices. That case, however, did not involve any question of the right to destroy such machines as the result of proceedings in rem. On the contrary, the only question was the power to enjoin criminal prosecutions.

Apparently on the assumption it had demonstrated that slot machines may be destroyed under G. S. 1935, 21-915, 925, 944 and 947, as the result of proceedings of the nature here being attempted, the state further argues that such power was not abrogated by the later enactment of 1903 appearing as G. S. 1935, 21-1508 and 1509, and in connection it discusses *State, ex rel., v. Myers,* 152 Kan. 52, 102 P. 2d 1028, and *State v. Myers,* 152 Kan. 56, 102 P. 2d 1023. In view of our conclusion it is not necessary that we comment at length on these last cases. The first case was an action to abate a nuisance allegedly maintained by a named defendant, and there is nothing said in that opinion that bears on whether a proceeding in rem may be maintained. The second case was a prosecution against a named defendant for violation of the statutes last mentioned. A judgment of conviction was set aside because of error in not permitting the defendant to show that the slot machine was not set up or kept in his place of business with his knowledge or consent. The company contends that under this case the court distinguished between mere possession, and possession and unlawful operation in connection therewith. In any event the case involved no question of destruction of the slot machine. Had that question been in that case, the particular statute under which prosecution was had provided destruction should be included in the judgment following conviction of the defendant.

The nature of the present proceeding is not discussed in the briefs. If it be assumed to be criminal, a rule of strict construction would be applied and the statutes relied on, if applicable, would not be extended to embrace acts or conduct not clearly included within the prohibitions of those statutes. (*State v. Waite,* 156 Kan. 143, 131 P.

2d 708.)  If the proceeding is not clearly criminal in character, it is nevertheless penal in nature, and its terms should not be extended to create a liability where one is not expressed.  The state does not direct our attention to any provision of our crimes act or our code of criminal procedure or otherwise, which authorizes the result sought to be attained.  The closest approach is Laws 1919, ch. 217, appearing as G. S. 1935, 21-2162 *et seq.*, authorizing seizure and sale of automobiles used for transportation of intoxicating liquor.  Even by analogy, it does not authorize the present proceeding.

The state's evidence shows no more than that the machines were found at a place which had a reputation as being a place where gambling was permitted.  No one, however, testified there had been gambling on the premises or any prosecutions therefor or that the machines had been used there, or any other place, for that purpose.  The evidence was that one machine was out of order and that all three were in a private room and covered with a quilt, and that no one of them was loaded with coins and ready for operation.  We cannot accede to the state's contention that such a state of facts made it incumbent on one claiming ownership to come forward and produce proof the possession was lawful.  Assuming for the moment that a proceeding in rem might be maintained, the state had the burden throughout.  We think that if the machines involved are to be destroyed because used for gambling purposes, the remedy is by prosecution of those maintaining them under statutes by the provisions of which seizure and destruction may be ordered.  (See *State v. Brown*, supra.)

It was not made to appear that the slot machines seized were *prohibited* devices under the statutes relied on by the state and therefore subject to destruction.

Our conclusion is that if mere possession of a slot machine is to be made an offense, the legislature should so provide.  No such provision having been made, the ruling of the trial court was correct and it is affirmed.

PRICE, J., not participating.